Hon. Arthur Levitt State Comptroller
This is in response to your request for my opinion as to (1) whether State agencies are authorized to purchase properties in the Love Canal area for the purposes of reclamation and rehabilitation of such properties and if so, (2) whether such agencies have the authority to make such purchases at prices based on the appraised full market value of the properties without regard to contamination.
You inform me that you have been asked to approve a contract whereby UDC-Love Canal, Inc., a subsidiary of the New York State Urban Development Corporation, would relocate persons in the Love Canal area and purchase their property in its name, holding record title as nominee of the State. The purchase price of such properties would be based on their full market value without regard to the contamination.
Among the papers submitted with your request is the order of the Commissioner of Health dated August 2, 1978, declaring the existence of a state of emergency* and a communication from Governor Carey to the Commissioner of the Department of Transportation dated August 7, 1978, issued pursuant to Executive Law, § 10, that an emergency exists which requires assistance of the State. You have also furnished me with a copy of a letter from the Commissioner of Health to the Commissioner of the Department of Transportation dated August 30, 1978, wherein the Commissioner of Health recommended that all persons living in the first ring of homes — those residents on 97th and 99th Streets directly bordering the Canal — be relocated as soon as possible. Such action by the Commissioner of Health and by the Governor effectively establish that the subject premises are substandard and insanitary.
As to the first question presented, therefore, the Urban Development Corporation and its subsidiary have the power, pursuant to statute and corporate charter, to acquire the properties by purchase in furtherance of their corporate purposes (McKinney's Unconsolidated Laws, § 6260 [c]).
Since it appears that UDC and its subsidiary are authorized to acquire the subject properties for their corporate purposes, the question of whether Executive Law, § 10 and Public Health Law, §1388 furnish the requisite authority to purchase such properties need not be reached. Indeed, no definitive answer could be given to that question since the powers of government under such sections have never been the subject of litigation. However, our State Constitution does provide that the protection and promotion of the health of the inhabitants of the State are matters of public concern and provision therefor shall be made by the State in such manner and by such means as the Legislature shall from time to time determine (Article XVII, § 3).
The resolution of the second question presented by your request is not free from doubt. Pursuant to Article XVII, § 3 of the State Constitution aforementioned, and pursuant to the declarations of emergency issued by the Governor and the Commissioner of Health, it is obvious that there exists a serious public health hazard which must be corrected. The State in addressing this concern must do so for the benefit of all of the people of the State of New York, not merely those who reside at Love Canal or close by. It will apparently be necessary that the land involved be cleared and dug up. Many homes must be destroyed and residents displaced. Where such action is undertaken for the good of the people of the State as a whole, and where the vendors are entirely innocent, it would appear that the State or UDC would be able to acquire their lands at negotiated prices based on the appraised full market value of the lands and improvements at the nearest earlier date when there was a real, or normal, market. Compare New York Constitution, Art. I, § 7 subd. (a) that property shall not be taken without just compensation, and id. Art. XVII, § 3 supra.
While no cases have involved the precise factual situation here presented, similar results have been reached in cases where market values became virtually non-existent during the depression of the 1930's (Mtr.of Bd. of Water Supply, 277 N.Y. 452, 458); and see, also, cases involving so-called "condemnation blight" (see City of Buffalo v.Clement, 28 N.Y.2d 241). However, payment should in no way be interpreted or construed as a concession or admission of any liability or wrongdoing whatsoever by the State of New York, its instrumentalities, agents, servants or employees, and payees should be so advised.
In answer to your second question, therefore, it is my opinion that, while not entirely free from doubt, properties can be acquired and paid for at their market value unaffected by the contamination.
* Commissioner Whalen issued his order pursuant to Public Health Law, § 1388 as added by L. 1978, ch. 487. Section 1388 gives the Commissioner express power "to declare the existence of an emergency and take such measures and do such acts as he may deem reasonably necessary and proper for the preservation and protection of the public health."